**Jeffery P. Robinson**, *Pro Hac Vice*
robinson@sgb-law.com
**Amanda E. Lee**, *Pro Hac Vice*
lee@sgb-law.com
**L. Song Richardson**, *Pro Hac Vice*
richardson@sgb-law.com
**Kimberly N. Gordon**, *Pro Hac Vice*
gordon@sgb-law.com
SCHROETER, GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, WA  98104
(206) 622-8000
Fax:  (206) 682-2305

**Kelly R. Beckley**, OSB #74031
kbeckley@beckleyandlongtin.com
P.O. Box 11098
Eugene, OR  97440
(541) 683-0888
Fax:  (541) 683-0889

Attorneys for Defendant McGowan

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>    v.<br><br>DANIEL GERARD MCGOWAN,<br><br>                  Defendant. | Case No. CR 06-60011-AA<br><br>DEFENDANT MCGOWAN'S MEMORANDUM IN SUPPORT OF RELEASE ON CONDITIONS |

**I.      INTRODUCTION**

      Daniel McGowan requests release pending trial on conditions under the Bail Reform Act,

18 U.S.C. § 3142.  As discussed in this memorandum, Mr. McGowan is neither a danger to the

1 – MEMORANDUM IN SUPPORT
OF RELEASE ON CONDITIONS

community nor a risk of flight.  Considering the seriousness of the offenses charged and the length of the sentence he faces if convicted as charged, the defense proposes a set of conditions for release that are the "least restrictive" as provided for in the Act and that will provide clear assurances that Mr. McGowan will appear as required.  The defense proposes, along with the usual conditions of release:  (1) that Mr. McGowan live with his elder sister and her family in New York; (2) that he continue working at his previous employer; (3) that he continue in the educational program he was previously enrolled in at Tri-State College in New York City; (4) that he be placed on electronic home monitoring to satisfy the Court that when he is not working or at school, he is at his sister's home; and (5) that Mr. McGowan's family member's execute an agreement to forfeit over $1.6 million in property to assure Mr. McGowan's appearance.

## II.     PROCEDURAL BACKGROUND

Mr. McGowan was arrested at his place of employment in New York on December 5, 2005.  His initial appearance was December 8, 2005 in Brooklyn, New York.  He was ordered detained and waived a Rule 40 hearing.  He was then removed to this District.  He is indicted, along with several other individuals, with conspiracy to commit arson, and with a number of arson counts related to two specific alleged incidents – one on January 2, 2001 at the Superior Lumber Company in Glendale, Oregon, and one on May 21, 2001 at Jefferson Poplar Farms in Clatskanie, Oregon.  The government also alleges that a number of vehicles were damaged or destroyed at Jefferson Poplar Farms, and this allegation forms the basis of numerous additional counts under 18 U.S.C. § 844.

**II.     DISCUSSION**

The defense understands that the government is likely to oppose the release of Mr. McGowan.  Under 18 U.S.C. § 3142(e), there is a rebuttable presumption in favor of detention if the Court finds there is probable cause to believe Mr. McGowan committed an offense for which the maximum term is 10 years or more pursuant to 18 U.S.C. § 924(c).  The presumption places upon the defendant a burden of production, not a burden of persuasion.  United States v. Jessup, 757 F.2d 378, 386 (1st Cir. 1985).  To establish that release on conditions is appropriate, a defendant may present evidence of his family and community ties, employment status, and the willingness of family and friends to mortgage their homes to post bond.  United States v. Carbone, 793 F.2d 559, 561 (3d Cir. 1986).  While the Court must be mindful of the presumption, because it rests on a general set of assumptions, as recognized in Jessup, the Court may "conclude that what is true in general is not true in the particular case …[and] release the defendant, as long as the defendant has presented some evidence and the magistrate or judge has evaluated all of the evidence with Congress's view of the general problem in mind."  Jessup, 757 F.2d at 384.  In this case, there is more than sufficient evidence to support release on a combination of conditions, considering the factors under § 3142(g).

**A.     Personal History and Characteristics**

Daniel McGowan was born, raised, and was living at the time of his arrest in New York City.  He grew up in Rockaway Beach in Queens.  His father was a New York City police officer and his mother worked in an elementary school.  He attended college in Buffalo.  He lived in Brooklyn for a time after graduation from college, and has been living in New York since 2002.  Mr. McGowan has been living with his girlfriend Jenny Synan.  They met in 2002 and recently became engaged to be married.

Mr. McGowan has a vast circle of friends and family in the area. As is attested to in the letters accompanying this memorandum, his friends, family, co-workers, classmates, and acquaintances hold him in high esteem and have enormous respect for his character and integrity. The defense notes that many who wrote indicated that they would trust Mr. McGowan with their lives, that they are comfortable entrusting their children to his care, and that they have no doubt that he is neither a danger to the community nor a risk of flight. Exhibit A (Letters to the Court).[1]

Mr. McGowan has been working at Women's Law in Brooklyn, New York, a not-for-profit organization whose mission is to provide understandable legal information to women living with or escaping domestic violence. The organization provides comprehensive, state-by-state, information on obtaining protection orders from abusers and getting access to other resources from governmental and charitable groups that assist victims of domestic violence. Mr. McGowan worked on the organization's website. The Board of Women's Law has indicated that it wishes to continue Mr. McGowan's employment if the Court releases him to New York pending trial. Exhibit B (Letter from Ann Betterton, President of the Board of Directors of Women's Law). Elizabeth Martin, the Executive Director of Women's Law, plans to attend the detention hearing.

Mr. McGowan graduated in 1996 with a Bachelor of Science from the State University of New York (Buffalo). At the time of his arrest, he was enrolled at the Tri-State College of Acupuncture in New York, working toward a Master's degree in Acupuncture. If released pending trial, he is eligible to return to this program of study. Tri-State, founded in 1979, is one

---

[1] At the time most of these letters were written, this case was assigned to Magistrate Judge Coffin, which is why they are addressed to him.

4 – MEMORANDUM IN SUPPORT
OF RELEASE ON CONDITIONS

of the oldest accredited acupuncture schools in the country, and it is fully licensed under New York law.  The educational programs it offers in acupuncture and oriental medicine are nationally and internationally recognized.

It is neither feasible nor appropriate for defense counsel to attempt to capture in this memorandum what is expressed in the attached letters from Mr. McGowan's family, friends, classmates, and co-workers.  It is noteworthy that among the letters are some from people who have known Mr. McGowan since he was very young, as well as some from relatively recent acquaintances.  Yet the letters consistently describe a person who cares deeply for other people, who is utterly devoted to his family and Ms. Synan, and who is quite committed to his work and education.  Members of his community also describe his ongoing charitable work, such as his organization of "markets" where people exchange goods entirely for free so that those who need things the most will get them.

Mr. McGowan has no issues with his physical or mental condition that will interfere with release.  He has no history of drug or alcohol abuse.  Mr. McGowan has several arrests related to protest activity.  He has responded to each arrest and charge responsibly and met all court appearances and court-imposed conditions.  Mr. McGowan learned after his previous hearing in New York that the records available to the Court may not have reflected all of his arrests.  At his interview with Pre-Trial services last week, he ensured the Pre-Trial Services officer was made aware that he had been arrested on other occasions, including arrests in New York, although these may not be reflected in the data that appeared in the previous Pre-Trial Services report.  Mr. McGowan was not on probation, parole, or other release at the time he was arrested in December, 2005.

5 – MEMORANDUM IN SUPPORT
OF RELEASE ON CONDITIONS

**B.     Issues Related to Flight**

Based on the government's representations at the previous detention hearing, the defense anticipates that the government will assert that two issues in particular show Mr. McGowan might flee: one is that he used pseudonyms; the other is travel to foreign countries in 2001 and 2003. In reality, neither is an indicator that Mr. McGowan poses a flight risk.

**Pseudonyms**: Mr. McGowan does not have any false identification, any identification that belongs to other people, or any means of creating false identification. His only passport is in his birth name. His driver's license is in his birth name. He has never obtained official identification in any other name. His only citizenship is in the United States. Mr. McGowan has only used his birth name and social security number in obtaining employment, student loans, credit cards, and the like. He communicates with his current provider of student loans with his birth name. This is not a situation where person charged with a crime has a history of using false names or fake identification to travel or navigate the world of business, finance, and law. Mr. McGowan's use of two other names is more in the tradition of author's pen names.

One of the names Mr. McGowan has used is "Dylan Kay." He has used this name to write articles, publish material on the internet, and communicate generally on issues related to prisoners. He started using this name after the conviction of a man named Jeff Luers. The Luers case drew negative attention from a variety of sources, and Mr. McGowan preferred to keep his true identity private when he communicated with or about Mr. Luers. So far as the defense is aware, nothing in the government's allegations about the use of this name suggests it was a ruse to avoid detection for criminal activity.

The other name Mr. McGowan has used is "Jamie Moran." He used this name primarily in connection with his work on a project known as RNC Not Welcome. This organization

6 – MEMORANDUM IN SUPPORT
OF RELEASE ON CONDITIONS

advocated protesting the Republican National Convention in New York in 2004. Mr. McGowan and the organization were profiled in such publications as Rolling Stone magazine. It was no surprise to Mr. McGowan that the project generated hate mail and threats from people with different views. He did not want his true identity disclosed for personal privacy and safety reasons, so he used this pseudonym instead of his given name. Again, so far as the defense is aware, nothing in the government's allegations about the use of this name suggest it was a ruse to avoid detection for criminal activity. Indeed, at the time Mr. McGowan was active with RNC Not Welcome, his photograph appeared in several publications.

The government has also noted that some people called Mr. McGowan "Sorel." This is hardly an alias. Rather, it was a moniker or nickname that friends used. As for the government's assertion that Mr. McGowan used the name "Djenni," the defense has no information to support that claim.

There is a vast difference between using pseudonyms to preserve one's personal privacy and avoid contact with members of the general public, and using aliases or fictitious names to obtain false identification, passports, credit cards, social security cards and other types of official documents that would conceal a person's true identity. Only the latter shows a tendency toward flight. Mr. McGowan's use of pseudonyms was closely related to certain specific non-criminal activities – activities of the type that can bring unwanted attention. Yet he remained at all times Daniel McGowan in the world of travel, law, and credit. Nor did Mr. McGowan keep his use of pseudonyms secret. As noted in several of the letters attached, friends who had known Mr. McGowan all his life as "Daniel" or "Danny" occasionally joined him for dinner or parties with friends who had met him as "Jamie." Mr. McGowan was not leading separate lives or concealing his use of the pseudonyms Jamie Moran and Dylan Kay.

7 – MEMORANDUM IN SUPPORT
OF RELEASE ON CONDITIONS

**Travel to Canada**: The government suggests that Mr. McGowan "hid out" in Canada after committing crimes in Oregon. Judging from the record of the detention hearing in New York, this argument is premised on a short segment of a conversation Mr. McGowan had with a man named Jake Ferguson in April, 2005. The conversation was taped by Mr. Ferguson, who is a confidential informant for the government.

Mr. McGowan was living in Eugene, Oregon in 2001. His home address did not change in the months immediately before, during, or after the events alleged in the indictment. In the late summer of 2001 he traveled to Canada. He stayed for a couple of months in a town called Bella Coola, north of Vancouver. As indicated in the attached affidavit of Catherine Ann Fletcher (Exhibit C), Mr. McGowan lived with Ms. Fletcher, her husband, and her two children. It is a small community and Mr. McGowan lived openly there. He used his given name. As Ms. Fletcher noted, Mr. McGowan did not behave like someone who was "hiding out," and he attended at least one very large event – a community potlatch – that would be entirely inconsistent with "hiding out." Mr. McGowan returned from Canada to Eugene around October, 2001. He returned to his home address.

The tape is not particularly elucidating. Nowhere does Mr. McGowan say he was going to Canada to "hide out." In the conversation with Mr. Ferguson on April 2, 2005, the subject of traveling to Canada arises when Mr. McGowan talks about what appears to be a personal issue involving Mr. McGowan and two or three other people he knew. So far as the defense is aware, these other individuals are not alleged by the government to be involved in the incidents alleged in the indictment. There are no references to any of the alleged incidents when Mr. McGowan talks about the trip. In relating the story, which involved Mr. McGowan seeing one of the people he knew in Canada, he makes a single reference to having gone to Canada because he felt like it

8 – MEMORANDUM IN SUPPORT
OF RELEASE ON CONDITIONS

was getting "hot" in Eugene, so he "disappeared" for a few months. From the context of this reference on the tape, there is no support for the conclusion that Mr. McGowan was fleeing from the "heat" of a criminal investigation.

The suggestion that this trip to Canada shows that Mr. McGowan is a current flight risk should be rejected. Neither the fact of the trip itself or his statement about it in 2005 support the conclusion that he was fleeing from law enforcement or attempting to evade detection. Mr. McGowan was not under arrest or subpoena, nor had anyone from law enforcement contacted him. He went to Canada at least several weeks after the latest incident that the government has alleged against him, and he returned to Eugene in October of the same year to live at his usual home address.

**Vacation in Ireland**. In September, 2003 Mr. McGowan and his girlfriend went on a vacation in Ireland. The Pre-Trial Services report presented to the District Court in New York highlighted this trip as a potential indication of flight risk. This conclusion is entirely unfounded. The trip was a ten-day vacation. Mr. McGowan and his girlfriend saw friends of hers in Dublin. They visited two of Mr. McGowan's fifth-cousins, Ann Feeney and Patty McGowan, in County Leitrim. They spent a couple of days in Belfast.

Mr. McGowan traveled with his U.S. passport, which should bear an indication of the trip, if the Irish authorities stamped it. The trip was purely for pleasure and to visit family. One vacation overseas which included visits with distant relatives, absent reliable indications of an intent to flee the jurisdiction, should not be held against Mr. McGowan.

It has now been five years since the first of the two alleged incidents in which the government claims Mr. McGowan participated. A sojourn in Canada, which is bookended by his residence in the same home in Eugene, and a brief vacation in Ireland, provide no support for the

9 – MEMORANDUM IN SUPPORT
OF RELEASE ON CONDITIONS

theory that he is a flight risk. In fact, Mr. McGowan has maintained an open and consistent residence in the United States, in his own name, virtually his entire life. If he had wanted to change identities, there would be actual fake identification to show it. His arrest and the search of his home were a complete surprise to him. While he had no motive to remove anything from his home before it was searched, he also had no opportunity to do so. The search of his home produced absolutely no evidence of any false identification or ability or intent to flee. If he had wanted to hide, he would have actually tried to hide.

C.   **Nature of the Charges and Weight of the Evidence**

The defense concedes that the charges are serious. Mr. McGowan faces up to life in prison as currently charged. As noted above, however, while the number of charges is considerable, the number of incidents in which Mr. McGowan is accused of participating is not: he has been accused of participated in two incidents. The number of charges is high because there is a separate charge for each vehicle that was allegedly damaged or destroyed at Jefferson Poplar Farms. The Ninth Circuit has held that the weight of the evidence against an accused is the factor accorded the <u>least</u> weight under the Bail Reform Act. <u>United States v. Motamedi</u>, 767 F.2d 1403, 1408 (9th Cir. 1985).

D.   **Release Conditions, Including Security Interests in Property**

Mr. McGowan is fortunate to have tremendous support from his family and close friends. As noted, many of them have submitted letters to the Court to explain not only why they believe that Mr. McGowan should be released pending trial, but also that they will assist him in whatever ways they can. Mr. McGowan is especially close to his older sister, Lisa McGowan, and her family. Ms. McGowan is an executive with a packaging company in New York. She is married, and has a young daughter, Lily. Daniel McGowan treasures his niece.

Mr. McGowan is a student and works for a non-profit organization. He does not have the assets of his own to post a bond. Ms. McGowan is willing and able to provide security interests in property to designate for potential forfeiture to secure Mr. McGowan's compliance with this Court's release order and his appearance at all future Court dates. These assets include the following:

- Condominium in New York, owned by Lisa McGowan; $800,000 in equity
- House in Manhasset, owned by Lisa McGowan; $500,000 in equity
- House in Jewett, New York, owned by Lisa McGowan; $250,000 in equity
- Property/buildings in Jewett, New York, owned by Lisa McGowan; $80,000 in equity

Ms. McGowan will be present in Court with the deeds for these properties. The source of these assets is significant: Mr. McGowan's sister is putting up assets that represent her entire savings, including assets that are earmarked to pay for Lily's education, to meet her brother's bond. Mr. McGowan's family is also providing resources for his legal defense, and they will pay for travel expenses throughout the duration of the case. Mr. McGowan will not destroy the financial future of his sister, brother-in-law, and his niece Lily in order to avoid facing his accusers.

The defense further proposes that Mr. McGowan reside with his sister Lisa and her family in Brooklyn pending trial. She will agree to assume supervision and assure his appearances in court. Mr. McGowan should resume his employment at Women's Law and resume his education at Tri-State. When not at work or at school, the defense proposes that he be monitored through electronic home monitoring, under the supervision of Pre-Trial Services in the Eastern District of New York.

11 – MEMORANDUM IN SUPPORT
OF RELEASE ON CONDITIONS

## IV. CONCLUSION

For all of the reasons expressed above, the defense requests that Mr. McGowan be released under appropriate conditions, as authorized by the Bail Reform Act.

Respectfully submitted this 23rd day of January, 2006.

                                          SCHROETER, GOLDMARK & BENDER

                                        *s/ Amanda E. Lee, L. Song Richardson, & Jeffery P. Robinson*
                                        AMANDA E. LEE
                                        L. SONG RICHARDSON
                                        JEFFERY P. ROBINSON
                                        Counsel for Defendant Daniel McGowan